UNITED STATES of America, Plaintiff–Appellee,

v.

Carol J. LAMPIEN, Defendant–Appellant.

Terry J. Lampien, Respondent–Appellant.

No. 98–2115.

United States Court of Appeals, Seventh Circuit.

Submitted Feb. 14, 2000.*

Decided Jan. 10, 2001.

---

* The motion to dismiss this successive appeal has been submitted to the panel that heard Carol Lampien's original appeal, pursuant to Operating Procedure 6(b). Judge Eschbach, who was a member of the original panel, retired from judicial service while this appeal was under advisement, and Judge Bauer has replaced him on the panel.

**525**

Before BAUER, MANION, ILANA DIAMOND ROVNER, Circuit Judges.

*ORDER*

Defendant-appellant Carol J. Lampien ("Lampien") and her son Terry J. Lampien ("Terry" or "Terry Lampien") appeal from an order in which the district court declined to find the government in breach of the settlement agreements that the Lampiens entered into in order to purge themselves of civil contempt. The government has moved to dismiss the appeal, and we grant that motion.

In 1995, Lampien pleaded guilty to embezzling nearly $500,000 from her former employer, Wausau Insurance Company ("Wausau"), in violation of 18 U.S.C. § 1033(b)(1)(A). When the district court sentenced her in September 1995, it ordered her to make full restitution to Wausau. On February 26, 1996, the court held Lampien in civil contempt for disposing of certain assets and attempting to secret others in for the purpose of evading her restitution obligation. R. 36. In April of that same year, the court also held Lampien's son, appellant Terry J. Lampien ("Terry"), in contempt after he failed to comply with the court's order to convey to Wausau the house that had belonged to Lampien's mother, Martha Lampien. R. 52.[2]

Ultimately, in May 1996, both Lampien and her son entered into settlement agreements with the government in order to

purge themselves of contempt. In relevant part, Lampien agreed to quitclaim to Wausau her interest in her mother's home and to transfer most of her personal property and certain financial assets to Wausau as well. R. 79 at 2–3 ¶¶ 1, 4. The house and the personal property were later to be sold in a manner agreed to by the parties or, failing that, "by ... any commercially reasonable manner and method ordered by the Court"; the proceeds of the sale would then be credited against Lampien's outstanding restitution obligation. *Id.* at 3–4 ¶¶ 3, 6, 8. Lampien also agreed "[t]o forgo any right to appeal the transfer of [her mother's home] to Wausau Insurance" and "relinquishe[d] the right to appeal said transfer of all of C. Lampien's Personal Property." *Id.* at 3 ¶¶ 2, 5. She further agreed that "[i]f the manner and method of sale is determined by order of the Court, defendant waives her right to appeal said order." *Id.* at 4 ¶ 8. Prior to approving this agreement, the court questioned Lampien at length to ensure that she understood its terms. R. 119. The court specifically asked Lampien whether she understood that she was "relinquish[ing][her] right to appeal the transfer of all of this property," and Lampien said that she did. *Id.* at 7.

The agreement that Terry Lampien signed had comparable provisions. Terry agreed to honor a quitclaim deed that conveyed Martha Lampien's home to Wausau. R. 75 at 7 ¶ 1. He also agreed to withdraw a number of pending motions and appeals challenging the validity of that conveyance, and to relinquish the right to further appeal the transfer of the home to Wausau.

---

**2.** Martha Lampien died in 1995, and her will named Carol Lampien as the principal beneficiary of her estate. In an apparent effort to keep her mother's home beyond the reach of the government and Wausau, Lampien subse-

quently disclaimed any interest in the estate and the home passed to Terry. A state court later declared Lampien's disclaimer invalid, and the district court ordered Terry to convey the house to Wausau.

*Id.* at 7 ¶ 2. Terry further agreed to compensate Wausau for the proceeds of an annuity worth $31,169.26 that his mother had been ordered to transfer to Wausau, but which she had instead given to her son (*see* R. 36 at 2); those proceeds had largely vanished. *See id.* at 7–8 ¶ 3. In satisfaction of his obligation to Wausau, Terry agreed to transfer to Wausau the bulk of his personal property and financial assets, with the exception of certain items specifically identified in an attachment to the agreement. *Id.* at 8 ¶ 4 & R. 76, Ex. B. The items of personal property were then to be sold in a manner agreed upon by the parties, and failing that, in a manner dictated by the district court; and the proceeds were to be credited against Terry's debt to Wausau. R. 75 at 8 ¶¶ 5, 7. Except as to the identified items that were to remain in Terry's possession, Terry, like his mother, expressly "relinquishe[d] the right to appeal said transfer of all of his Personal Property[.]" *Id.* ¶ 6. The agreement further provided that in the event that the court was asked to specify the manner and method of sale, "Terry J. Lampien waives his right to appeal said order." *Id.* ¶ 7.

In one form or another, the Lampiens have been attempting to undo these settlement agreements, as well as the court-ordered sale of their assets that eventually occurred, for the past four years. Three years ago, in fact, this court was presented with two appeals by Carol Lampien which, in relevant part, challenged the district court's order approving the sale of her personal property and Martha Lampien's home. We dismissed those challenges, concluding that Lampien had waived her right to appeal in the settlement agreement she signed. "By relinquishing without exception her right to appeal the transfer and sale of her property," we reasoned, "Lampien waived her right to challenge court's approval of the sale." *United States v. Lampien,* Nos. 97–1740, 97–3656, 1997 WL 800877, at \*2 (7th Cir. Dec. 31, 1997).

The instant appeal arises from the Lampiens' joint motion below seeking a declaration that the government was in breach of the settlement agreements. R. 162. The district court denied the motion, noting that "[t]he issue has been decided by this Court, appealed to the United States Court of Appeals for the Seventh Circuit, and decided." R. 163. The Lampiens have appealed, contending that the settlement agreements should be declared void for seven separate reasons: (1) Terry legitimately inherited Martha Lampien's property, and consequently (2) the district court lacked jurisdiction to order him to quitclaim Martha Lampien's home to Wausau; (3) "[a]s a convicted prisoner, Carol Lampien lacked the capacity to enter into a contract," and thus her settlement agreement is voidable; (4) Terry Lampien was denied due process when he was ordered to surrender his property; (5) the government and/or Wausau removed from Martha Lampien's home certain items of personal property belonging to Carol Lampien and her mother before the settlement agreements were signed; (6) the government breached the settlement agreement with Terry Lampien by failing to give him certain items of personal property that were not to be sold; and (7) the government likewise breached the settlement agreement with Carol Lampien by failing to give her certain personal belongings that were not to be sold.

Any issues with respect to Carol Lampien's rights and obligations under the settlement agreements are not before us. The notice of appeal (R. 164) makes clear that this appeal is limited to the district court's denial of the Lampiens' motion to have the government declared in breach of their settlement agreements. That mo-

tion, although it purported in name to be on behalf of both Carol and Terry Lampien, raised issues only with respect to Terry Lampien's settlement agreement. *See* R. 162. Consequently, the sole arguments that are properly before us are those which concern Terry Lampien, not his mother.

We further conclude that the issues that Terry Lampien has attempted to raise are either foreclosed by his agreement not to appeal the transfer of Martha Lampien's home or are patently without merit. *First,* Terry has specifically waived any right to appeal the transfer of Martha Lampien's home. R. 75 at 7 ¶ 2. That agreement bars him from arguing on appeal the two issues he has identified with respect to the legitimacy of his interest in that property and the district court's jurisdiction to order him to surrender the property. The Lampiens suggest that such no-appeals clauses are unconscionable, but we enforce such clauses regularly, *e.g., United States v. Williams,* 184 F.3d 666, 668 (7th Cir.1999), and the Lampiens give us no reason why the clause in Terry's settlement agreement with the government should not be enforced. *Second,* the due process argument is frivolous. Terry essentially argues that he was deprived of due process by being forced to surrender his property in order to purge himself of contempt and thus avoid being imprisoned. Yet, Terry surrendered the property by agreement. Criminal defendants as well as contemnors routinely enter into agreements with the government in which they make concessions in order to lessen or avoid time in prison. The record reveals that Terry Lampien was represented by counsel when he entered into the settlement agreement, and we have been pointed to no evidence whatsoever suggesting that he did not enter into the agreement knowingly and voluntarily. *Third* and finally, Terry has not adequately established a breach of the settlement agreement. His claim on appeal is that items he did not agree to surrender for liquidation—specifically, his clothing, tools, baseball cards, records, and compact discs—were in fact taken and sold. Notably, it appears that only two of these items—his clothing and tools—were included in the list attached to the settlement agreement identifying the personal property that was to remain in Terry's possession. *See* R. 76, Ex. B. Moreover, in their joint motion before the district court, the Lampiens did not argue that Terry's clothing and tools, or any other item that the settlement agreement entitled him to keep, had been liquidated improperly. Indeed, the only point that the Lampiens made with clarity below is that the Terry had been for too long denied access to the items that were to finally remain with him, not that he had been permanently deprived of any specific item in contravention of the agreement. *See* R. 162 at 2. At the same time, the only specific relief that the Lampiens sought was the return of Martha Lampien's former home to Terry (*see id.* at 4–5), a matter which, as we have already noted, the Lampiens specifically agreed not to appeal. The Lampiens have therefore forfeited arguments other than those presented to the district court. *E.g., United States v. Walls,* 225 F.3d 858, 862 (7th Cir.2000). Finally, although they argue that Terry's clothing and other items were improperly taken from him, the Lampiens cite no record evidence that might support this contention. *See* Fed. R.App. P. 28(a)(7) (appellant's brief must contain statement of relevant facts "with appropriate references to the record"); Circuit Rule 28(c). Accordingly, they have not provided us with the factual basis that would be required in order to find that the settlement agreement had been breached in any way. *E.g., United States v. Vest,*

116 F.3d 1179, 1189 n. 4 (7th Cir.1997), *cert. denied,* 522 U.S. 1119, 118 S.Ct. 1058, 140 L.Ed.2d 120 (1998).

The government's motion to dismiss this appeal is therefore granted. The government has suggested that we impose sanctions pursuant to Fed. R.App. P. 38. However, because we are convinced that the imposition of monetary sanctions would only diminish the restitution that is being made to Wausau, we decline to sanction the Lampiens.

DISMISSED.